Below is an Opinion of the Court.

RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In Re: ) Bankruptcy Case
) No. 13-37719-rld11
ELLEN MARGUERITE McCRACKEN, )
) MEMORANDUM OPINION
Debtor. )

On March 25, 2014, I held a final evidentiary hearing ("Hearing") on chapter 11[1] debtor Ellen Marguerite McCracken's ("Ms. McCracken") motion to avoid the judgment lien ("Avoidance Motion") of Wells Fargo Bank, N.A. ("Wells Fargo") on her residence property (the "Residence") located in Clackamas County, Oregon. Following the presentation of evidence, including the testimony of Ms. McCracken, and hearing argument from Ms. McCracken and counsel for Wells Fargo, I closed the evidentiary record and took the matter under advisement.

Since the Hearing, I have reviewed the Avoidance Motion and

---

[1] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Page 1 - MEMORANDUM OPINION

supporting documents filed by Ms. McCracken and the opposition and supporting documents filed by Wells Fargo. I also have reviewed the admitted exhibits and my notes from the Hearing. I have considered carefully the evidence and arguments presented. I further have taken judicial notice of the relevant entries on the docket and the documents filed in Ms. McCracken's chapter 11 case and in her earlier chapter 13 case, case no. 13-34651-rld13, for the purpose of ascertaining facts not reasonably in dispute. Federal Rule of Evidence 201; <u>In re Butts</u>, 350 B.R. 12, 14 n.1 (Bankr. E.D. Pa. 2006). In addition, I have reviewed relevant legal authorities, both as cited to me by the parties and as located through my own research.

In light of that consideration and review, this Memorandum Opinion states the court's findings of fact and conclusions of law under Civil Rule 52(a), applicable with respect to this contested matter under Rules 7052 and 9014.

## FACTUAL BACKGROUND

Ms. McCracken purchased the Residence in December 2002 and has occupied the Residence since that time. She acquired title by warranty deed recorded on December 13, 2002. <u>See</u> Exhibit 1. Her purchase of the Residence apparently was funded in part by a loan (the "Loan") from New Freedom Mortgage Corporation in the original principal amount of $145,400. The Loan was documented by a promissory note dated June 23, 2003 (the "Note"). <u>See</u> Exhibit 3, Note attached as Exhibit 2 to the Complaint for Deed of Trust Foreclosure filed in Clackamas County Circuit Court on September 28, 2011. Repayment of the Loan was secured by a deed of trust ("Trust Deed") on the Residence recorded on June 30, 2003. <u>See</u>

Exhibits 2 and A.

Ms. McCracken testified that she made payments on the Loan until June or July 2010. At some point in time, the Note was endorsed by New Freedom Mortgage Corporation to Wells Fargo. <u>See</u> Exhibit 3, last page of the Note attached as Exhibit 2 to the Complaint for Deed of Trust Foreclosure filed in Clackamas County Circuit Court on September 28, 2011. The Deed of Trust was assigned to Wells Fargo by "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for New Freedom Mortgage Corporation" by an assignment recorded on March 28, 2011. <u>See</u> Exhibit 10, p.1.

Thereafter, Wells Fargo commenced foreclosure efforts with respect to the Residence property. The process has not proceeded smoothly. Apparently, a notice of Ms. McCracken's default and an election to sell the Residence nonjudicially was recorded on April 14, 2011. However, the nonjudicial foreclosure was aborted by a "Rescission of Notice of Default" recorded on August 10, 2011. <u>See</u> Exhibit 3, pp.1-2. Wells Fargo subsequently filed a "Complaint for Deed of Trust Foreclosure" ("Foreclosure Suit") in Clackamas County Circuit Court on September 28, 2011. <u>See</u> Exhibit 3, pp.3 and following. Ms. McCracken filed a response and counterclaims ("Counterclaims"), including claims that the Note had been fraudulently transferred and that, in fact, the Note obligation had been paid in full, in the Foreclosure Suit on December 5, 2011. <u>See</u> Exhibit 4. She subsequently removed the Foreclosure Suit to the United States District Court for the District of Oregon ("District Court") on February 8, 2012. <u>See</u> Exhibit 6.

After extended proceedings before the District Court (<u>see,</u>

Page 3 - MEMORANDUM OPINION

e.g., Exhibit 6), the Foreclosure Suit was tried before the Hon. Owen M. Panner on July 23, 2013, and the District Court issued written Findings of Fact and Conclusions of Law on July 30, 2013. See Exhibit B. However, in the meantime, on July 22, 2013, Ms. McCracken filed a chapter 13 bankruptcy case before this court ("First Bankruptcy Case"). The First Bankruptcy Case was dismissed on September 16, 2013, after Ms. McCracken failed to file missing documents by the deadline as ordered. Ms. McCracken appealed the dismissal of the First Bankruptcy Case to the Ninth Circuit Bankruptcy Appellate Panel, where her appeal is pending, but proceedings in that appeal currently are suspended.

Following the dismissal of Ms. McCracken's First Bankruptcy Case, on November 19, 2013, the District Court entered a "Judgment for Foreclosure Sale" ("Judgment") in the Foreclosure Suit. See Exhibit B. A number of the District Court's holdings in the Judgment are relevant to deciding the Avoidance Motion in this proceeding. First, the District Court entered a money judgment against Ms. McCracken as follows:

> in the amount of $158,290.51, consisting of the outstanding Principal of $128,613.39 with prejudgment interest through July 19, 2013 of $21,570.12 (accruing thereafter until entry of judgment at $19.38/per diem) and other expenses and advances made necessary by Defendant's default and permitted under the Loan including accruing interest which continues to accrue at the per diem rate until entry of judgment, and at the judgment rate thereafter.

Exhibit B, pp.1-2. Second, the District Court held that Wells Fargo was the holder of the original Note. Exhibit B, p.3. The District Court further held that the Trust Deed was a "valid and perfected lien" against the Residence "superior to any interest, lien, or claim of the Defendant McCracken." Exhibit B, p.2. Finally, the District Court held:

Page 4 - MEMORANDUM OPINION

> 6. The interest of Defendant McCracken and any successor in interest in the subject property can be foreclosed and terminated by the United States marshal for the District of Oregon by sale free and clear of all claims, rights, or interest of any and all parties to this action.
> 7. Upon sale, Defendant McCracken and all persons claiming by, through, or under them are barred from all right, title, interest, and equity of redemption in and to the property or any part of that property, excepting only any statutory right of redemption as Defendant McCracken may have therein.

Exhibit B, p.3. The Judgment has not been appealed and is final.

Ms. McCracken filed the present chapter 11 case on December 16, 2013. She filed the Avoidance Motion on January 13, 2014 (Docket No. 29). Wells Fargo filed its response on January 27, 2014 (Docket No. 39). The final evidentiary hearing on the Avoidance Motion originally was scheduled to take place on March 6, 2014 at 1:30 pm, with a deadline for prehearing submissions of February 28, 2014. See Docket No. 47. However, on Ms. McCracken's motion, the Hearing date was rescheduled to March 25, 2014 at 10:00 am, and the submissions deadline was extended to March 21, 2014. See Docket Nos. 73 and 78. On March 25, 2014, the Hearing took place as rescheduled, and after the presentation of evidence and arguments, as noted above, I closed the evidentiary record and took the matter under submission.

JURISDICTION

I have jurisdiction to decide the Avoidance Motion under 28 U.S.C. §§ 1334, 157(b)(1) and 157(b)(2)(H), (K) and (O).

DISCUSSION

In light of my obligation to consider the filings and arguments of a pro se litigant, such as Ms. McCracken, liberally, see Nordeen v.

Page 5 - MEMORANDUM OPINION

Bank of America, N.A. (In re Nordeen), 495 B.R. 468, 476-77 (9th Cir. BAP 2013), I discern four distinct issues raised by Ms. McCracken in the Avoidance Motion and her related filings and at the Hearing, and I discuss each of them as follows:

1. <u>Fraud in the transfer/assignment of the Note and Trust Deed and payment in full of the Note</u>

In her papers and in her evidentiary presentation at the Hearing, Ms. McCracken asserted a) that Wells Fargo did not hold the Note; b) that the assignments of the Note and Trust Deed were fraudulent, hinting darkly at the occurrence of "funny business;" and c) that the Loan obligation was paid in full, with no debt owing to Wells Fargo. These assertions essentially raise the same claims made by Ms. McCracken in her Counterclaims in the Foreclosure Suit, and they are dealt with directly in the Judgment, which followed the trial in the District Court.

Specifically, as noted above, the District Court determined that Wells Fargo was the holder of the original Note. The District Court further determined that the Trust Deed was a "valid and perfected lien" against the Residence that was "superior to any interest, lien, or claim" of Ms. McCracken. Finally, the District Court determined that Ms. McCracken owed Wells Fargo $158,290.51, including unpaid Loan principal of $128,613.39.[2]

---

[2] Ms. McCracken presented her March 2013 credit report, admitted as Exhibit 13 ("Credit Report"), to establish that her Loan obligation had a $0 balance. See Exhibit 13, p.15. However, as pointed out by counsel for Wells Fargo, the Credit Report also reflected an outstanding home mortgage loan obligation to Wells Fargo, with a balance of $128,613 (the same whole dollar outstanding principal amount of the Loan found by the
(continued...)

Page 6 - MEMORANDUM OPINION

The Judgment was not appealed by the deadline specified in the Federal Rules of Appellate Procedure. See Fed. R. App. P. 4(a); Ray Haluch Gravel Co. v. Central Pension Fund, 133 S. Ct. 2825 (June 17, 2013). Preclusion principles do not allow this court to relitigate issues finally determined through findings of the District Court entered in a judgment following trial. "The concept of the preclusive effect of final orders is a basic principle of American jurisprudence." Great Lakes Higher Education Corp. v. Pardee (In re Pardee), 218 B.R. 916, 923 (9th Cir. BAP 1998), aff'd, 193 F.3d 1083 (9th Cir. 1999). "Celotex [Corp. v. Edwards), 514 U.S. 300 (1995)] enforces the basic principle enunciated in Stoll [v. Gottlieb, 305 U.S. 165 (1938)] that a final order that is not appealed cannot be collaterally attacked in a later proceeding even if the order was entered in error." In re Pardee, 218 B.R. at 924. The Judgment is final, and I am bound.

2. The Judgment and § 522(f)

Ms. McCracken filed the Avoidance Motion pursuant to § 522(f), which provides in relevant part in subparagraph (1)(A), that a debtor in bankruptcy

> may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . , if such lien is – (A) a judicial lien . . . .

Under § 101(36), the term "judicial lien" is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."

---

² (...continued)
District Court) and a past due amount of $34,372. See Exhibit 13, p.19.

Page 7 - MEMORANDUM OPINION

Ms. McCracken faces three problems in applying § 522(f) lien avoidance to the Judgment. First, is the Judgment of the type that is covered by § 522(f)? This issue was confronted by the bankruptcy court for the Northern District of California in In re Kwan and Betty Chu, 258 B.R. 206 (Bankr. N.D. Cal. 2001).

In the Chu case, the creditors had obtained a foreclosure judgment with respect to their deed of trust on the debtors' residence prior to the debtors' bankruptcy filing. The debtors argued that the foreclosure judgment was a judicial lien that could be avoided pursuant to § 522(f)(1)(A). The debtors conceded that prior to the entry of the foreclosure judgment, the creditors' deed of trust was a recorded security agreement that created a security interest in favor of the creditors regarding the residence property. "Section 522(f)(1)(A) does not authorize avoiding a security interest on the ground that it impairs the debtor's exemption." Id. at 208. However, the debtors contended that upon entry of the foreclosure judgment, the creditors' deed of trust lien merged with the judgment and thus became a judicial lien avoidable under § 522(f)(1)(A).

The bankruptcy court was not convinced by the debtors' arguments. Since the deed of trust lien had been created by agreement and was thus consensual, and Congress did not authorize the avoidance of such consensual liens in § 522(f), it seemed "unlikely that Congress would wish to prohibit avoidance of consensual liens prior to issuance of a foreclosure judgment but to permit avoidance after issuance of such a judgment." Id. at 209. In addition, the bankruptcy court determined that even if the claim based on the creditors' security interest merged

Page 8 - MEMORANDUM OPINION

into the foreclosure judgment, the creditors' security interest represented by their recorded trust deed remained intact unless the foreclosure judgment expressly cancelled or avoided it. Id. In the Chu case, the foreclosure judgment did neither. Accordingly, the bankruptcy court denied the debtors' motion to avoid the creditors' lien and granted relief from stay to the creditors to complete foreclosure.

I find the reasoning of the bankruptcy court in Chu persuasive, and in this case, it is bolstered by the District Court's express determination in the Judgment that the Trust Deed lien continued as "a valid and perfected lien."

However, even if Ms. McCracken could overcome the foregoing analysis, there are two other impediments to application of § 522(f) in this case. § 522(f)(2)(A) states the formula for calculating how to determine whether a lien impairs an exemption:

> For purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of –
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

While we know the amount of the Trust Deed lien from the Judgment, Ms. McCracken presented no evidence to establish the value of the Residence property in order to determine whether the Judgment amount actually "impaired" the amount of her homestead exemption.

Finally, § 522(f)(2)(C) provides that, "This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure." "This provision was intended to clarify that a court

Page 9 - MEMORANDUM OPINION

judgment effectuating a mortgage foreclosure, such as an order authorizing a sale of mortgaged property under a state judicial foreclosure procedure, may not be avoided."  4 Collier on Bankruptcy ¶ 522.11[3] (Alan N. Resnick and Henry J. Sommer eds., 16th ed. 2013). Accordingly, even if I had evidence to establish that the amount of the Judgment lien impaired Ms. McCracken's homestead exemption, § 522(f)(2)(C) specifically precludes application of that calculation with respect to the Judgment.

Based on the foregoing analysis, I conclude that Ms. McCracken cannot use § 522(f) to avoid the Judgment lien of Wells Fargo in this case.

3. The "Olmstead Mandate" and Oregon H.B. 3016

Ms. McCracken is disabled.  She has appeared at every "in court" hearing in this case in a wheelchair with her caretaker in attendance.  Her disabled status has been recognized by the Oregon Department of Human Services, Disability Determination Offices.  See Exhibit 4, p.1.

Based on her disability, Ms. McCracken argues two bases, one under federal law and one under state law, in support of her assertions that Wells Fargo's Trust Deed lien should be avoided or, at the very least, her Residence should be exempt from sale on execution of the Judgment.  Her federal law argument is based on the "Olmstead Mandate," which has its origin in the Supreme Court's decision in Olmstead v. L.C., 527 U.S. 581 (1999).

In the Olmstead case, the Supreme Court faced the question as to whether the proscription of discrimination against the disabled in the

Page 10 - MEMORANDUM OPINION

Americans with Disabilities Act of 1990 ("ADA"), 104 Stat. 337, 42 U.S.C. § 12132, required the placement of persons with mental disabilities for treatment in community settings rather than under institutional care. The answer was a "qualified yes." Id. at 587. Treatment in a community-based setting would be required "when the State's treatment professionals have determined that community placement is appropriate, the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." Id.

The ADA requires that, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities <u>of a public entity, or be subjected to discrimination by any such entity</u>." 42 U.S.C. § 12132 (emphasis added). In its "Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and <u>Olmstead v. L.C.</u>," the United States Department of Justice states that enforcement of the <u>Olmstead</u> decision is a top priority.

Ms. McCracken argues persuasively that keeping disabled people in their homes rather than institutionalizing them is consistent with the objectives of the ADA, as recognized in the <u>Olmstead</u> decision. However, mandating <u>public entities</u> to act to implement community-based programs for treatment of the disabled and to allow them to remain in their homes is one thing. Depriving a <u>private banking institution</u>, such as Wells Fargo, of the security for an allowed claim or requiring it to waive, or

Page 11 - MEMORANDUM OPINION

be forbidden from executing on, its security is entirely another. At the Hearing, I advised Ms. McCracken that she needed to provide me with federal statutory authority that would allow me to avoid Wells Fargo's Judgment lien under the <u>Olmstead</u> Mandate, i.e., the ADA. I extended the time for submission of any such authority to Friday, April 4, 2014. She provided me with no such authority by the April 4th deadline.

What she did file was a one-page document, styled "Petitioner's NOTICE of WITHDRAW [sic] of <u>MOTION TO VOID JUDICIAL LIEN</u> & MOTION TO OBTAIN SUSPENSION FROM ALL BANKRUPTCY PROCEEDINGS FOR A TIME & MOTION FOR CONTINUENCE [sic] <u>of 11 U.S.C. § 362</u>" ("Suspension Motion"). There is no evidence that she served the Suspension Motion on counsel for Wells Fargo. In fact, when informed at the intake counter that she would be required to serve a copy of the Suspension Motion on counsel for Wells Fargo, she refused, advising the court staff that she only would serve the President and CEO of Wells Fargo in San Francisco, as she noted on the face of the Suspension Motion. I have responded to the relief requested in the Suspension Motion by separate order.

In addition, she has submitted Oregon House Bill 3016 ("H.B. 3016"), which would exempt a person's entire homestead property from sale on execution for debts that "arise directly from or as a result of catastrophic or terminal illness or injury." "Catastrophic or terminal illness or injury" is defined in H.B. 3016 to mean "an illness or injury that results in the owner incurring an uninsured obligation to a health care provider . . . that is more than $10,000 and amounts to more than 50 percent of the owner's annual adjusted gross income . . . ."

Although Ms. McCracken stated at the Hearing that she could

Page 12 - MEMORANDUM OPINION

1  provide evidence that the Loan was covered by H.B. 3016, no evidence
2  ultimately was submitted at the Hearing tending to establish that the
3  Loan was anything other than a consensual loan provided to enable Ms.
4  McCracken to acquire the Residence.  I have no basis in the evidentiary
5  record to hold that the Loan arose as a result of Ms. McCracken's
6  catastrophic illness or injury.  However, in any event, there is no
7  evidence that H.B. 3016 ever was passed by the Oregon legislature.[3]

8  In the absence of statutory authority, I cannot avoid or forbid
9  enforcement of the Judgment by Wells Fargo.  I have been provided with no
10 such authority under federal or Oregon state law.

4. <u>Adverse possession</u>

Finally, Ms. McCracken argues that the Judgment lien should be avoided as a result of her adverse possession of the Residence pursuant to Oregon Revised Statutes ("O.R.S.") § 105.620.  In addition to certain other requirements, an adverse possession claimant must "have maintained actual, open, notorious, exclusive, hostile and continuous possession of the property for period of 10 years."  O.R.S. § 105.620(1)(a).  The adverse possession claimant also must establish each of the required elements by "clear and convincing evidence."  O.R.S. § 105.620(1)(c).

The prototypical adverse possession claimant is a long-term squatter or tenant at sufferance who seeks to acquire ownership in real property that is in title to another person or entity.  A successful adverse possession claim rewards the claimant with fee simple title to the subject real property.  O.R.S. § 105.620(1).

---

[3] In fact, there is no evidence that either house of the Oregon legislature even has taken a vote on H.B. 3016.

Page 13 - MEMORANDUM OPINION

In this case, Ms. McCracken already has fee simple title to the Residence through her recorded warranty deed. See Exhibit 1. What she wants through her Avoidance Motion is a determination that she owns the Residence free and clear of Wells Fargo's Trust Deed lien. I have serious doubts that Oregon's adverse possession law was intended to apply to allow a homeowner to avoid a consensual home loan lien, such as is represented by the Trust Deed. Ms. McCracken has not cited any Oregon court decisions indicating that O.R.S. § 105.620 can be applied in the circumstances of this case, and I have found no such authorities. However, there is a more limited, clear avenue to arrive at a resolution of the adverse possession claim before me.

Whatever evidence is submitted with respect to the other elements under O.R.S. § 105.620(1)(a), the claimant asserting adverse possession rights must prove by clear and convincing evidence that he or she held the subject property in a manner that was "hostile" to the rights of the opposing claimant for the required ten years. See McCall v. Hyde, 39 Or. App. 531, 592 P.2d 1064 (Or. App. 1979). At the Hearing, Ms. McCracken testified that she only ceased making Loan payments in June or July 2010. Prior to that time, so long as she made Loan payments to Wells Fargo or its predecessor(s) in interest, I cannot find that her possession of the Residence property was hostile to the lender. Since June 2010 is less than five years ago, Ms. McCracken has failed to meet her burden of proof to establish that her possession of the Residence property was hostile to the claim of Wells Fargo and its predecessor(s) in interest under the Note and Trust Deed for ten years, and her adverse possession claim must fail on that basis alone.

CONCLUSION

For the foregoing reasons, I will deny the Avoidance Motion.  I will prepare and enter an order consistent with this Memorandum Opinion contemporaneously.

###

cc:     Ellen Marguerite McCracken
        Cara Richter, Esq.
        U.S. Trustee

Page 15 - MEMORANDUM OPINION